**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: 09-04053/hb
Adv. Pro. Number: 11-80032/hb

ORDER ON PLAINTIFFS' MOTION FOR DETERMINATION OF DAMAGES

The relief set forth on the following pages, for a total of 7 pages including this page, is hereby **ORDERED**.

**FILED BY THE COURT**
**10/20/2011**



US Bankruptcy Judge
District of South Carolina

Entered: 10/21/2011

1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: ) | |
| ) | Case No.: 09-04053/hb |
| Herbert Michael Coleman and ) | Chapter 13 |
| Deborah Marie Coleman, ) | |
| ) | |
| Debtors. ) | |
| ) | |
| ) | |
| Herbert Michael Coleman and ) | Adv. Pro. No.: 11-80032/HB |
| Deborah Marie Coleman, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | **ORDER ON PLAINTIFFS' MOTION FOR** |
| ) | **DETERMINATION OF DAMAGES** |
| v. ) | |
| ) | |
| Cash Advance Now and ) | |
| Capital Collections, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiffs filed their action in the above captioned matter on March 30, 2011. The Defendants were properly served on April 11, 2011. An entry of default was made in this matter on June 2, 2011, and a damages hearing scheduled for September 2, 2011. Though Defendants were given notice of the hearing in this matter, they did not appear.

Plaintiffs complain that the Defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; the South Carolina Consumer Protection Code ("SCCPC"), S.C. Code Ann. § 37-5-108; the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10, *et seq.*; and that the Defendants should be sanctioned for their conduct for breaching the automatic stay provided by 11 U.S.C. § 362(k), and under the Court's inherent authority pursuant to 11 U.S.C. § 105.

At the call of the case, the Plaintiff Deborah Coleman took the stand and testified regarding her damages caused by Defendants. Based on the pleadings of record, the entry of default and the testimony presented, the court finds as follows:[1]

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and Local Civil Rule 83.XI.01, DSC.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157.  Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. Mrs. Coleman obtained a cash advance loan over the internet from Defendants.

3. According to the terms of the loan, Mrs. Coleman was required to provide Defendants with a cancelled check so that the Defendants could draft her checking account for payments.

4. At some point and time, prior to filing bankruptcy and after the loan was made, Mrs. Coleman closed that account.

5. Mr. and Mrs. Coleman filed bankruptcy on May 29, 2009.  Defendants were given timely notice of the bankruptcy filing.

6. As part of their bankruptcy filing, they also filed a Chapter 13 Plan, which was confirmed on July 24, 2009.

7. Mrs. Coleman started receiving telephone calls from Defendants during the summer of 2010.

8. The calls continued at least weekly thereafter until on or about December 29, 2010. By that time, Mr. Coleman was able to recognize Defendants' phone number on Caller I.D. and would refuse to pick up the telephone.

---

[1] To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and, to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

9. At that time, Mrs. Coleman worked third shift and the phone calls would frequently wake her up and disturb her sleep.

10. The Defendants' conduct led Mrs. Coleman to call her attorneys to ask for their advice.

11. After speaking with her attorneys, Mrs. Coleman wrote down a contemporaneous recollection of the phone call she had received.

12. On December 29, 2010, Defendants' agent, John Medina, called Mrs. Coleman.

13. At the beginning of the conversation, Medina told Mrs. Coleman that the check she had written to them was not good and that he was calling to collect the debt.

14. Mrs. Coleman advised Medina that she had filed bankruptcy and that she had notified Defendants of this fact numerous times over the last several months, and that he should contact her lawyer about the matter.

15. Medina told Mrs. Coleman that this was not a bankruptcy matter and that he was not going to call her lawyer.

16. Medina told Mrs. Coleman that her debt has become a "federal offense" because she wrote a bad check and threatened to have Mrs. Coleman arrested.

17. Medina told Mrs. Coleman that he was going to contact Wal-Mart to garnish her wages, or to get her fired.

18. Medina stated that he was going to contact Mrs. Coleman's two references given to Defendants to harass them and see if they had anything to do with this check. Medina also said that he would try to collect from them because they too were responsible for the debt.

19. Medina also threatened to intentionally damage Mrs. Coleman's credit, or include erroneous information in her credit reports.

20. Medina advised, however, that he would forego any of his threatened actions if Mrs. Coleman would pay $100.00 that day by credit card or debit card and, if so, he would close out the account.

21. As a result of this behavior, Mrs. Coleman testified that she lost sleep and was highly upset and nervous for approximately two weeks after the phone call. Based on the call, Mrs. Coleman was in constant fear during that a law enforcement official would come to her home and arrest her.

22. Mrs. Coleman suffered from chest pain as a result of the anxiety. She was able to manage her pain with over-the-counter pain medicine. The pain was significant, but Mrs. Coleman did not want to go to the doctor. The pain subsided about two weeks thereafter.

23. The Plaintiffs' Complaint seeks relief under the FDCPA, SCCPC, SCUTPA, and 11 U.S.C. § 362 alleging as follows:

   A. That Defendants violated provisions of FDCPA by their use of unconscionable means to collect or attempt to collect a debt from the Colemans. 15 U.S.C. § 1692;

   B. That Defendants violated the SCCPC by their use of unconscionable means to collect or attempt to collect a debt from the Colemans. S.C. Code Ann. § 37-5-108;

   C. That Defendants willfully violated the automatic stay by intentionally contacting the Colemans post-petition. 11 U.S.C. § 362(k);

   D. That Defendants violated the SCUTPA. S.C. Code Ann. § 39-5-10 *et seq.*

24. The FDCPA provides that, in the event of a violation, a consumer is entitled to actual damages, statutory damages of up to $1,000.00, costs and reasonable attorney's fees. 15 U.S.C. § 1692(k). As a result of Defendants' default and Mrs. Coleman's testimony, the

5

Colemans are entitled to statutory penalties in the amount of $1,000.00, plus costs and reasonable attorney's fees.

25. The SCCPC provides that a consumer may recover actual damages and statutory damages up to $1,000.00, from one engaging in unconscionable conduct in collecting a debt. S.C. Code Ann. § 37-5-108(2). Consumers are also entitled to a recovery of reasonable attorney's fees. S.C. Code Ann. § 37-5-108(6). The remedies awarded under the SCCPC are in addition to those available for the same conduct that violates other laws. S.C. Code Ann. § 37-5-108(7). Accordingly, the Colemans are also entitled to statutory damages of $1,000.00 for the Defendants' violation of the SCCPC, plus costs and reasonable attorney's fees.

26. Defendants' post-petition conduct constitutes a willful violation of the automatic stay pursuant to 11 U.S.C. § 362(k). That section provides that Plaintiffs may recover "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." *Id.* Plaintiffs have demonstrated that Mrs. Coleman suffered damages in the form of emotional distress, a category of damages cognizable for a creditor's violation of the automatic stay provided by 11 U.S.C. § 362(k).[2] As a result of Defendants' default and Mrs. Coleman's testimony, the Court finds that the Plaintiffs have suffered actual damages for

---

[2] In prior cases, this Court has awarded such damages. See, In re Johnson, C/A No. 97-06698-W, 2001 WL 1806979, slip op. (Bankr. D.S.C. June 26, 2001) (awarding debtors $150.00 for emotional distress damages because of debtor's credible testimony); In re Messer, C/A No. 03-04429-JW, slip op. (Bankr. D.S.C. Dec. 19, 2005) (awarding emotional distress damages in the amount of $500.30, despite the fact that there was no evidence of severe stress or medical problems related to such emotional distress and debtors received legal advice shortly after being served with the foreclosure action that willfully violated the stay); Weatherford v. Timmark (In re Weatherford), 413 B.R. 273, 289 (Bankr. D.S.C. 2009) ("Although [debtor] did not present evidence of medical injury to demonstrate the distress or harm she suffered, she did present credible and convincing testimony indicating that she suffered from anxiety and depression as a result of Defendants' actions, condition requiring medication and counseling." Therefore, Debtor was entitled to an award of $1,000.00 for emotional damages.). Other Courts have also awarded such damages. See, In re Gaston, C/A No. 09-00249, 2011 Bankr. LEXIS 1433 (Bankr. D. Haw. April 14, 2011) (awarding debtor $50,000.00 in damages for her emotional distress and loss of enjoyment of life because her rheumatoid arthritis was severely and permanently aggravated by creditor's willful violation of the stay); In re Jones, C/A No. 06-00380-8-RDD, 2007 Bankr. LEXIS 4649 (Bankr. E.D.N.C. June 27, 2007) (awarding debtor $400.00 in emotional distress damages because creditor's willful violation of the stay caused debtor increase the amount of visits to her counselor and therapist, who prescribed additional medications for depression and sleep deprivation).

emotional distress in the amount of $1,000.00, and is entitled to costs and attorney's fees. Further, the Court finds that, after consideration of the nature and frequency of the contact, punitive damages in the amount of $2,000.00 will also be awarded to discourage similar conduct in the future.

26.     Plaintiffs also assert a right to treble actual damages under SCUTPA. S.C. Code Ann. § 39-5-140(a). However, the Court finds that Plaintiffs are not entitled to treble damages, as the allegations do not support a finding of recoverable damages for a SCUTPA violation.[3]

27.     Plaintiffs have produced an up-to-date Affidavit of Attorney's Fees through the date of the hearing in the amount of $3,983.42 and are entitled to recover their fees incurred for the prosecution of this matter pursuant to the FDCPA, the SCCPC, and 11 U.S.C. § 362(k).

**IT IS THEREFORE ORDERED, THAT:**

Plaintiffs are entitled to a judgment against Defendants, and Defendants shall be jointly and severely liable to Plaintiffs in the full and complete sum of $8,983.42 for statutory damages, emotional distress and punitive damages for violating 11 U.S.C. § 362, and payment of costs and attorney's fees.

---

[3] The SCUTPA provides that "[a]ny person who suffers any *ascertainable loss of money or property*, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually . . ." S.C. Code Ann. § 39-5-140(a) (emphasis added). Plaintiffs allege that they suffered emotional distress from Defendants' conduct, which, without any evidence to the contrary, does not constitute a "loss of money or property, real or personal." In addition, Plaintiffs assert that they suffered a financial loss, but no evidence of any financial loss (other than attorney's fees for defending this action) was shown at the damages hearing.

   In a recent case, Atkison v. Law Office of Capital Corp., LLC, et al. (In re Atkison), Adv. Pro. No. 11-80056-JW, C/A No. 10-08180, slip op. (Bankr. D.S.C. Aug. 3, 2011), this Court sanctioned these Defendants for similar conduct and awarded a judgment against them in the amount of $10,000.00. In that Order, the Court awarded $1,000.00 in statutory damages for violation of the FDCPA, actual damages in the sum of $4,000.00 including attorney's fees and damages for emotional distress, resulting from the stay violation under 11 U.S.C. § 362, breach of contract of the terms of a confirmed plan under 11 U.S.C. § 1325, contempt of court for violating the confirmed plan and harassment, and as damages under SCUTPA. In addition, the Court further found that the defendants' conduct was willful and egregious and awarded the plaintiff punitive damages of $5,000.00. Although both cases involved default situations, the Atkison case is distinguishable from the instant case because the Plaintiffs alleged a cause of action for breach of contract of terms of a confirmed plan under 11 U.S.C. § 1325. This breach, in addition to emotional distress and other causes of action, constituted actual damages that the Court trebled under SCUTPA. In the instant case, Plaintiffs did not allege a cause of action for breach of contract terms of confirmed plan under 11 U.S.C. § 1325. Therefore, the only actual damages arose from Plaintiffs' emotional distress, which alone are not recoverable or entitled to trebling under SCUTPA.